**STATE of Tennessee**

v.

**William Marshall Coady FERGUSON.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 23, 2007 Session.

March 28, 2007.

Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, William Marshall Ferguson.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

The Defendant, William Marshall Coady Ferguson, was indicted by a Bedford County grand jury on three counts of burglary, three counts of theft, and three

counts of vandalism. The charges arose from the Defendant's entry into a laundromat during regular business hours and his subsequent stealing of money from video game machines and a soap dispenser on three separate occasions. The Defendant pled guilty to three counts of theft and three counts of vandalism. Following a jury trial, the Defendant was also convicted of three counts of burglary. The Defendant was sentenced as a Range I, standard offender to serve an effective sentence of ten years and six months. On appeal, the Defendant asserts that the evidence is insufficient to support his three burglary convictions because he had the effective consent of the owners to enter the building. We conclude that the evidence was insufficient to support the three convictions of burglary beyond a reasonable doubt. Therefore, the judgment of the Bedford County Circuit Court is reversed, and the three burglary charges are dismissed.

### Background

This case arises from the Defendant entering the North Main Laundry, a self-serve laundromat in Shelbyville, on three separate occasions and stealing money from video game machines and a soap dispenser. In all three instances, the Defendant entered the laundromat during regular business hours—from 5:30 a.m. to 12:30 a.m.—when the facility was unlocked and open for business. The Defendant was subsequently indicted by a Bedford County grand jury for three counts of theft, three counts of vandalism, and three counts of burglary. The Defendant pled guilty to the three counts of theft and the three counts of vandalism; however, the Defendant proceeded to trial on the burglary charges.

At trial, the laundromat co-owner, Mr. Brent Patterson, testified regarding the three instances of criminal activity. The first instance occurred on August 8, 2005, and was discovered the following morning. Mr. Patterson testified that he observed that "the video [game] machines had all been broken open, and it looked like somebody tried to get in [the] soap dispenser." Mr. Patterson stated that the "change doors were all wide open on the video [game] machines" and that "somebody tried to jimmy the soap machine open, but it looked like they didn't succeed." Mr. Patterson testified that approximately $50.00 was taken from the video game machines on this occasion and that it cost about $100.00 to make the necessary repairs to the damaged machines. However, Mr. Patterson stated that he did not report this occurrence to the Shelbyville Police Department because he was "thinking maybe this was just a one-time occurrence" and would "never happen again."

The next instance occurred on August 11, 2005, and was also discovered the following morning. Mr. Patterson testified that, when he arrived at the laundromat, "[a]ll the video [game] machines had been jimmy [sic] open again." He stated that approximately $30.00 was taken from the video game machines on this occurrence and that he had to pay about $100.00 to replace the locks on the damaged machines. Mr. Patterson also testified that he reported this incident to the Shelbyville Police Department and provided Detective Brian Crews with a surveillance tape of the incident.

The final incident occurred on August 16, 2005. Mr. Patterson testified that "[a]ll the video machines had been broken open and also [the] soap dispenser had been broken ... open and all the money was removed, and the soap dispenser was torn up really bad." Mr. Patterson stated that approximately $30.00 had been taken from the machines and that he had to pay

$100.00 to repair the video game machines and $599.00 for replacement and installation of a new soap dispenser. Mr. Patterson also reported this occurrence to the Shelbyville Police Department and provided surveillance footage of the incident.

After viewing the videotape of the third incident, Detective Crews believed that the perpetrator was the Defendant. Detective Crews went to the Defendant's residence and instructed him to come to the Shelbyville Police Department for questioning. When asked whether he had committed the three crimes, Detective Crews testified that the Defendant "denied it at first," but when he was shown "the still shots from the videos that [the surveillance camera] had taken[,] ... he admitted" that he committed the offenses on all three dates. In his written statement on August 17, 2005, the Defendant stated as follows:

> [On August 16, 2005,] I walked to the laundry on N. Main and broke into the video machines and soap dispen[s]er and ... received about thirty-five dollars. About a week prior, I broke into the three video machines and received about $10 to $15 dollars and a few days before that broken into two of them and attempted on the third but unsuccessful receiving about twenty-thirty dollars.

Detective Crews testified that the Defendant stated that he committed the crimes because "he had a drug problem ... and he was using this money to purchase crack cocaine."

Following a jury trial, the Defendant was convicted of the three burglary charges. The Defendant was sentenced as a Range I, standard offender to an effective sentence of ten years and six months in the Department of Correction at 30%. The Defendant filed a motion for a new trial, alleging among other claims that the evidence was insufficient to support his convictions for burglary beyond a reasonable doubt. After a hearing, the trial court denied the Defendant's motion, reasoning as follows:

> [W]e had a jury trial on [this case], and I do believe that the evidence was not only sufficient but overwhelming in this particular case. The only issue, as we all know, a legal issue in this particular case, and that's whether you can commit a burglary when the particular facility, the business, was technically open to the public, 24/7.[1]
>
> . . . .
>
> .... And the way it was indicted by the State of Tennessee, in my opinion, I've already rendered my legal opinion on this issue,[2] and in my opinion, he can be convicted of burglary on that particular theory, even though it was open to the public.... [O]therwise, I think that the evidence is overwhelming and the legal issues were pretty clear.

This appeal followed.

## Analysis

### I. Sufficiency of the Evidence

The Defendant's sole issue on appeal is whether the evidence was sufficient to sup-

---

1. As already mentioned, the facility was actually not open twenty-four hours a day but was only open from 5:30 a.m. until 12:30 a.m. However, the trial judge nonetheless correctly stated the legal issue, which was whether the evidence was sufficient beyond a reasonable doubt to convict the Defendant of burglary when he entered the facility during regular business hours.

2. At the conclusion of the State's proof, the Defendant made a motion for judgment of acquittal based upon the fact that the State did not carry "its burden of proof upon regards to the burglary." At that time, the trial judge stated that, "[r]espectfully, I believe that there is evidence in the record that will support ... conviction of the burglary charges, so I'm going to overrule the motion."

port his convictions for burglary beyond a reasonable doubt. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn.2003); *State v. Carruthers*, 35 S.W.3d 516, 557–58 (Tenn.2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn.1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn.1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236–37; *Carruthers*, 35 S.W.3d at 557.

Under Tennessee Code Annotated section 39–14–402, as applicable in this case, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft, or assault. . . ." Tenn.Code Ann. § 39–14–402(a)(3).[3] The Defendant asserts that, because he entered the laundromat during regular business hours, he had the effective consent of the owner to be inside the facility. Therefore, the Defendant asserts that the evidence is insufficient to prove each and every element of burglary beyond a reasonable doubt.

The State counters the Defendant's assertion by arguing that the Defendant did not have the effective consent of the owners to enter the laundromat to commit theft and vandalism. In support of this position, Mr. Patterson testified that he only allowed customers to enter the laundromat "[t]o do laundry or play video games. . . ." Mr. Patterson stated that he did not permit loiterers in the laundromat and would never have consented to a per-

---

**3.** We note that, although there was discussion in the record regarding whether the State was required to prove that the laundromat was "not open to the public," *see* Tenn.Code Ann. § 39–14–402(a)(1), the amended indictment does not charge the Defendant under this subsection. Instead, the Defendant was charged under Tennessee Code Annotated section 39–14–402(a)(3), which contains no requirement that the building is "not open to the public. . . ." *See Tenn.* Code Ann. § 39–14–402(a)(3). Therefore, the fact that the Defendant entered the laundromat during regular business hours is only relevant to the inquiry of whether he had the effective consent to enter. *See* Tenn.Code Ann. § 39–14–402(a).

son entering the facility to commit theft and vandalism. However, Mr. Patterson admitted that he only had attendants on duty at the facility during "[c]ertain hours" and had no signs displayed banning loitering or explaining that certain persons or activities were unwelcome.

We must determine whether any rational trier of fact could have found that the owner did not give his effective consent to the Defendant to enter the laundromat. Under Tennessee Code Annotated section 39–11–106(a)(9), effective consent is defined as follows:

> "Effective consent" means assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when:
>
> (A) Induced by deception or coercion;
>
> (B) Given by a person the defendant knows is not authorized to act as an agent;
>
> (C) Given by a person who, by reason of youth, mental disease, or defect or intoxication, is known by the defendant to be unable to make reasonable decisions regarding the subject matter; or
>
> (D) Given solely to detect the commission of an offense. . . .

Tenn.Code Ann. § 39–11–106(a)(9). "When the plain language of the statute is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes,* 109 S.W.3d 286, 291 (Tenn.2003) (citing *State v. Nelson,* 23 S.W.3d 270, 271 (Tenn.2000)).

We conclude that the plain language of the statute dictates that the Defendant had the effective consent to enter the laundro-

mat. The North Main Laundry facility, which was often unattended, was open and unlocked [4] for persons to enter the premises. The owners of the laundromat were authorized to set their business hours and supervision methods and elected to permit entry during the hours of 5:30 a.m. to 12:30 a.m. without any specific entry restrictions. "Effective consent" also includes apparent consent, and we conclude that it was apparent to a person who approached the laundromat during the hours it was open for business that the person had the owner's consent to enter. The Defendant entered the facility during these hours, and thus the owners gave effective consent in fact for the entry. Furthermore, none of the exceptions to effective consent, as provided in Tennessee Code Annotated section 39–11–106(a)(9)(A)–(D), apply. Therefore, nothing in the record would permit the trier of fact to find that the owner did not effectively consent to the entry of the Defendant.

The State's argument that the owners did not consent to loiterers or other criminal actors entering the facility fails because the laundromat did not employ any type of entry restrictions during regular business hours. In the Defendant's case, there is no evidence that laundromat personnel, if on duty, would have had any reason to deny the Defendant's initial entry to the laundromat.

## Conclusion

Because the laundromat owners had given their effective consent to the Defen-

---

**4.** The record is not entirely clear whether an attendant was present on the three occasions that the Defendant entered the laundromat and stole money from the video game machines and soap dispenser. However, the record shows that attendants were only on the

premises during "[c]ertain hours." The record also shows that the offenses were not discovered until the next morning on all three occasions, which suggests that no attendants were present when the offenses occurred.

dant's entry when the Defendant entered, we conclude that the evidence was insufficient for any rational trier of fact to find the Defendant guilty of three counts of burglary. The judgments of the Bedford County Circuit Court are reversed, and the three convictions for burglary are dismissed.