IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2019 Session

**STATE OF TENNESSEE v. CURTIS LOGAN LAWSON**

**Appeal from the Criminal Court for Knox County**
**No. 110461   G. Scott Green, Judge**

———————————————————

**No. E2018-01566-CCA-R3-CD**

———————————————————

Defendant, Curtis Logan Lawson, appeals from his Knox County convictions for burglary, theft of merchandise, and criminal trespass. Defendant argues that his burglary conviction should be dismissed because the burglary statute, Tennessee Code Annotated section 39-14-402(a)(3), does not apply to buildings that are open to the public. Defendant also argues that the trial court erred in failing to instruct the jury on principles of statutory construction and on the defense of ignorance or mistake of fact, that the evidence is insufficient to sustain his conviction for burglary, and that the trial court erred in denying his request for a community corrections sentence. Based upon our review of the record, briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Mark Stephens, District Public Defender; Jonathan Harwell and Kathryn Fraser, Assistant District Public Defenders, for the appellant, Curtis Logan Lawson.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On May 2, 2017, Defendant was indicted by the Knox County Grand Jury for one count of burglary, one count of theft of merchandise valued less than $500, and one count of trespassing. On September 21, 2017, Defendant filed a motion to dismiss the burglary count of the indictment in light of this Court's opinion in *State v. Danielle Chandria Jensen*, No. M2016-01553-CCA-R10-CD, 2017 WL 3671093 (Tenn. Crim. App. Aug. 25, 2017), *perm. app. granted, judgment vacated* (Tenn. Dec. 8, 2017). The trial court held the motion in abeyance pending the State's presentation of proof at trial. Defendant sought permission to file an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9, which was denied by the trial court. Prior to trial, the State made an oral motion in limine that Defendant not be allowed to mention any other subsections of the burglary statute, which was granted by the trial court.

## I. Trial Testimony

Robert McAuley testified that he was working as a loss prevention officer at the University Commons Walmart in Knoxville, Tennessee, on December 26, 2016. Through the store's surveillance cameras, he observed Defendant carrying a blue basket and moving very quickly through the store, which caught his attention. Mr. McAuley observed Defendant leave the chemical and paper goods department with some detergent pods and walk to the clothing department. Defendant then placed some merchandise into a plastic Walmart bag. Defendant abandoned his blue basket in the electronics department and went to the customer service area at the front of the store. Mr. McAuley observed Defendant exchange the merchandise in his bag for a refund. Mr. McAuley left his office, approached Defendant, and brought him back to the loss prevention office. Mr. McAuley got Defendant's information and asked him to give the money back, and Defendant complied. Defendant stated that it was a "late Christmas present" for his children.

A video recording of this incident was entered into evidence and played for the jury while Mr. McAuley described what was being shown. The recording confirmed that Defendant entered the store without any merchandise, selected merchandise from the shelves, and placed it into a plastic bag. Additionally, the recording showed that Defendant presented receipts when he exchanged the merchandise for a cash refund at the customer service counter.

Mr. McAuley testified that he printed off transaction records for the two refunds, one for a pair of jeggings valued at $12.98 and the second for toothbrush heads and dishwasher detergent pods valued at $26.70. The transaction record for the second refund showed two prior refunds in December 2016. Mr. McAuley testified that these prior returns were associated with Defendant's ID, which may be used when a person conducts a return without a receipt. Mr. McAuley then printed a training receipt to determine the total value of the items, which was $39.68. Mr. McAuley obtained

- 2 -

Defendant's information, checked the store's database, and determined that Defendant had a previous record at a Walmart in Sevierville, Tennessee.

The State entered into evidence a "Notification of Restriction from Property" form signed by Defendant in September 2012, prohibiting Defendant from entering any Walmart-owned property, including "all retail locations." The form states that the recipient may be "charged with criminal trespass" if he or she enters Walmart's property and that the restriction "will remain in effect until Wal-Mart Stores, Inc., rescinds it." There is a line on the form for the recipient to sign acknowledging that he has "read and understand[s] this Notice."

On cross-examination, Mr. McAuley agreed that the University Commons Walmart was open 24 hours a day and only closed on Christmas Day. He agreed that the store was open to the public and that there were no "no trespassing" signs or other signs indicating that people who had been banned from the store were not welcome. Mr. McAuley testified that there may be a greeter at the front of the store, but the greeter does not check identification as people enter the store and does not have access to the trespass list. Individuals do not have to present a membership card or go through any other entry restrictions prior to entering the store. Customers are not checked against the trespass list when they purchase merchandise, fill prescriptions at the pharmacy, or return merchandise for a refund. Mr. McAuley agreed that an individual on the trespass list could go into a Walmart store multiple times and would not be checked against the trespass list unless there was a problem, "[l]ike shoplifting." Mr. McAuley testified that the trespass list is enforced by notifying the individuals that they have been banned, and then "[i]t's on their good faith to stay off the property." Mr. McAuley testified that he would be able to personally recognize only a small fraction of the individuals on the trespass list, which is a nation-wide list of thousands of individuals. Mr. McAuley testified that even though Defendant signed his name when he made the refunds on December 26, 2016, the clerk at the customer service counter did not have access to the trespass list to be able to check Defendant's status. Mr. McAuley agreed that no one would have stopped Defendant to check his status if he had purchased the merchandise. Mr. McAuley agreed that the trespass notice does not indicate that a person may be charged with burglary.

On redirect examination, Mr. McAuley agreed that not every person who commits theft, trespass, or burglary at Walmart is caught. Mr. McAuley discussed the usual procedure when a person is placed on the trespass list: the notification form is read and explained to him or her, he or she can ask questions about it, and then he or she signs it. Mr. McAuley explained that it is a lifetime ban from all Walmart properties. Because the notification is a "corporate made form for every state," it does not detail specific state statutes with which a person could be charged. Mr. McAuley testified that as a loss prevention officer, he has special training on what to do "when somebody comes in that's

not supposed to be in [the] store" that the clerks working the cash registers do not. On re-cross examination, Mr. McAuley agreed that he was not present when Defendant received the trespass notification and did not know if the usual procedure was followed.

Angela McDonald testified that she was employed as an assistant manager at the Walmart in Sevierville, Tennessee. Part of her job responsibilities included giving no trespass notices when someone is banned from the store. Ms. McDonald testified that she typically gives such notices about four or five times a month and that she does it the same way every time. Ms. McDonald testified that the usual procedure includes having the individual read the form; explaining that he or she is banned from all Walmart properties, including Sam's Club and Murphy Gas, U.S.A.; answering his or her questions; and then signing the form and having the individual sign the form. Then, an asset protection associate gets the individual's personal information and puts it into the company's internal database. She did not specifically recall Defendant, but she did identify the "Notification of Restriction from Property" form that both she and he signed in September 2012, banning Defendant from Walmart property for shoplifting. She also identified the picture, taken the same day, associated with Defendant's record in Walmart's internal database.

On cross-examination, Ms. McDonald admitted that she did not have a specific memory of her encounter with Defendant or her discussion with him. Ms. McDonald testified that she does not write "life" on the form. She testified that she is responsible for signing the form "and then the asset protection associate takes over." She was not aware if Defendant was provided a copy of the form. Ms. McDonald agreed that Walmart has a detailed company policy for how employees are to deal with suspected shoplifters. However, because the policy is updated yearly, she did not recall the policy in effect in 2012 with regard to the suggested length of time a no trespass order should be effective, which was usually determined by the asset protection associate. Though Ms. McDonald could not recall when she came into the loss prevention office during the encounter with Defendant, she knew that she saw Defendant sign the notification form because she would not have signed it herself otherwise. Ms. McDonald testified that she usually stays in the loss prevention office waiting for the police officers to show up while the asset protection associate tallies the value of the items taken. However, once the officer arrived, Ms. McDonald left the room and did not know what further conversations were had with Defendant. Ms. McDonald explained the process for having the ban lifted, which included contacting the "home office." According to Ms. McDonald, if the ban has been lifted, it is removed from the internal system. Ms. McDonald agreed that there is nothing on the notification form that indicates that it lasts indefinitely.

Defendant elected not to testify but presented the testimony of Ashley Giebudowski, his ex-girlfriend. Ms. Giebudowski had known Defendant since high school and they dated off and on for about a year starting in November 2015. During the

time that they were together, they went to several different Walmart stores around Knoxville almost weekly. On those occasions, Defendant would make purchases either using cash or his EBT card with his name on it. Ms. Giebudowski testified that no one ever tried to stop them from entering the store, checked their ID as they entered, or checked their status on the trespass list. Ms. Giebudowski was with Defendant when he was arrested for shoplifting on December 26, 2016. Ms. Giebudowski testified that she was not aware what Defendant was doing that day because she had separated from him once inside the store. Defendant did not tell her what he planned to do, and she was not involved in the theft.

On cross-examination, Ms. Giebudowski testified that Defendant did not graduate high school, but she believed that he had obtained his GED. Ms. Giebudowski testified that Defendant could read and write and had never had any problems being able to do so. Ms. Giebudowski identified herself on a still photograph from the surveillance footage as the woman entering Walmart with Defendant on December 26, 2016. She testified that Defendant did not enter the store with any merchandise or receipts. When she met up with him in the customer service area, Defendant had a Walmart bag with items in it. Ms. Giebudowski assumed Defendant had gone back to the car to retrieve those items. Ms. Giebudowski did not pay attention to the items Defendant was returning. Defendant appeared calm while standing in the customer service line and did not do anything that made Ms. Giebudowski suspicious. When he was done, Defendant handed her some change to put in her wallet. When they were approached by the loss prevention officer, Defendant told Ms. Giebudowski he had done something and would explain later. Ms. Giebudowski was in the loss prevention office when Defendant admitted stealing items from the store and returning them for a refund. Ms. Giebudowski testified that she was familiar with Defendant's signature and denied that the signature on the notification form was his. Ms. Giebudowski identified Defendant as the person in the picture from Walmart's internal database.

The jury convicted Defendant as charged of burglary, theft of merchandise, and criminal trespass.

## II. Sentencing Hearing

The parties agreed that Defendant was a career offender. The State entered into evidence the presentence report as well as a report from the Community Alternatives to Prison Program ("CAPP"). The presentence report indicated that the 36-year-old Defendant had over thirty prior convictions, including eighteen convictions for burglary. It further noted several violations and revocations of probation. The CAPP report found that Defendant was "not appropriate" for community corrections based on his history of offenses in multiple states and counties, probation violations, and failure to appear charges, all of which indicated that Defendant "has a blatant disregard for the law and

unwillingness to change." It noted that Defendant had a substance abuse disorder; that he had admitted to using alcohol, various pills, marijuana, heroin, methamphetamine, cocaine, and other drugs; and that his drug of choice was opiates. The State entered into evidence numerous judgments for the prior convictions, including Defendant's prior conviction for theft from the Walmart in Sevierville. Significantly, this conviction, which was part of a plea agreement to a string of burglaries and thefts with a total effective sentence of ten years on probation, included a restraining order for Defendant to stay away from Walmart in addition to the trespass notification he had received from Walmart itself.

Defendant presented the testimony of his mother, Rhonda Lawson. Ms. Lawson testified that Defendant's life growing up was "pretty chaotic." She and Defendant's father divorced when Defendant was a year old, and Defendant's father "made himself unavailable." Ms. Lawson remarried, but Defendant's stepfather was abusive. Defendant's family moved around a lot, so Defendant went to different schools. When Defendant was twelve years old, he began spending time with a group of kids from church. Ms. Lawson found out later that there was a man who would give the group alcohol and molest them. Defendant was also molested by a cousin who was several years older than him. At that point, Defendant started using drugs, and everything "completely spiraled out of control." Defendant ended up in State custody as a teenager.

Ms. Lawson testified that Defendant has a significant family history of depression and addiction, including herself. Defendant had two children, ages eleven and nine, whose mother was also an addict. Ms. Lawson testified that even though Defendant had been in the criminal justice system a long time, she believed him this time when he said he wanted to change. According to Ms. Lawson, Defendant knew "if he doesn't get this right, he's not going to have the time to save his kids." Ms. Lawson testified that she was willing to help Defendant. Ms. Lawson was receiving methadone to treat her addiction, but Defendant had never had the opportunity to go through inpatient treatment. Ms. Lawson did not recall if Defendant went through a drug treatment program in Chattanooga in June of 2016.

Defendant made a statement of allocution. He apologized to his mother, the community, and the court. Defendant stated that despite his previous incarcerations, he realized that he was not going to change "until [he] g[o]t to the point to where [he] ha[d] had enough of [him]self." The biggest change for Defendant was attempting to understand the "underlying causes of [his] issues." Defendant admitted that he did not have respect for the law or respect for himself. Defendant stated that he probably did not "deserve to get out of jail again" but that his children and his mother deserved another chance. Defendant stated that he had "found God" and wanted to use all the pain and grief he had suffered "for something good." Defendant stated that the four-week program

in Chattanooga had not been enough, but he had been admitted to the treatment program at Jellinek and was looking forward to receiving treatment.

The trial court stated that although it had "philosophical differences on how this case is being prosecuted," the plain language of the burglary statute allowed such prosecutions under the facts of this case. Once the trial court "cross[ed] that threshold," it had to determine the appropriate punishment. Even though Defendant was articulate and had "a lot more positive attributes" going for him, he had "one of the worst" criminal histories the trial court had seen in over thirty years. The trial court sentenced Defendant as a career offender to 12 years for burglary and ordered that Defendant serve his sentence in incarceration. The trial court imposed sentences of 11 months and 29 days for theft of merchandise and 30 days for criminal trespass. Defendant's conviction for criminal trespass was merged with his conviction for burglary. The trial court ordered the sentences to run concurrently with each other and with Defendant's sentence in an unrelated case.[1] The trial court subsequently denied Defendant's motion for new trial, and Defendant filed a timely notice of appeal.

*Analysis*

*I. Application of the Burglary Statute*

As a preliminary issue, Defendant argues that the burglary statute with which he was charged, Tennessee Code Annotated section 39-14-402(a)(3), does not apply to buildings that are open to the public. This is at least the sixth case in which this Court has addressed the issue of whether the State may prosecute an individual for burglary when he or she commits a theft at a retail establishment that is otherwise open to the public but from which that individual has been banned, and all of the judges on this panel have thoroughly written on this issue. *See State v. Larry Charles Hefner, Jr.*, No. E2018-01164-CCA-R3-CD, 2019 WL 2763007, at *2-6 (Tenn. Crim. App. July 2, 2019), *perm. app. filed*; *State v. Abbie Leann Welch*, No. E2018-00240-CCA-R3-CD, 2019 WL 323826, at *3-4 (Tenn. Crim. App. Jan. 23, 2019), *perm. app. granted*; *State v. Jason Kane Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at *6-11 (Tenn. Crim. App. Oct. 23, 2018), *perm. app. granted*; *State v. Nikia Bowens*, No. E2017-02075-CCA-R3-CD, 2018 WL 5279374, *7-11 (Tenn. Crim. App. Oct. 23, 2018), *perm. app. granted*; *Danielle Chandria Jensen*, 2017 WL 3671093, at *9-10. The majority opinions in *Hefner*, *Welch*, *Ivey*, and *Bowens* each held that such prosecutions were permissible under the plain language of subsection (a)(3) of the burglary statute, that the burglary statute was not unconstitutionally vague, and that there was no conflict between the

---

[1] Defendant had pled guilty without a sentence recommendation to driving under the influence and driving while his license was revoked, and the trial court imposed a total effective sentence of 11 months and 29 days for those convictions.

burglary statute and the repeat shoplifting statute.[2] *See also State v. Ferguson*, 229 S.W.3d 312, 315 n.3 (Tenn. Crim. App. 2007) (noting that because the defendant was charged under subsection (a)(3), "which contains no requirement that the building is 'not open to the public[,]' . . . the fact that the [d]efendant entered the laundromat during regular business hours is only relevant to the inquiry of whether he had the effective consent to enter."). On the other hand, the *Jensen* opinion, which was subsequently vacated by the Tennessee Supreme Court on procedural grounds, and the dissenting opinion in *Welch* concluded that the "application of the burglary statute in cases like this violates procedural and substantive due process." *Abbie Leann Welch*, 2019 WL 323826 at \*6 (McMullen, J., concurring in part and dissenting in part); *but see id*. at \*3 (characterizing *Jensen*'s discussion of the burglary statute as dicta). This issue is presently pending before the Tennessee Supreme Court. *See State v. Abbie Leann Welch*, No. E2018-00240-SC-R11-CD, Order (Tenn. May 17, 2019). At this time we see no reason to depart from this Court's prior holdings in *Hefner*, *Welch*, *Ivey*, and *Bowens*.

## II. Jury Instructions

Defendant raises several challenges to the jury instructions in this case. A defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). Thus, "[t]he trial court has the duty to provide a complete charge of the law applicable to the facts of a case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010). This duty includes "giving jury instructions concerning fundamental issues to the defense and essential to a fair trial." *State v. Anderson*, 958 S.W.2d 9, 17 (Tenn. Crim. App. 1998). Accordingly, the trial court "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." *State v. Phipps*, 883 S.W.2d 138, 150 n.20 (Tenn. Crim. App. 1994). When reviewing the adequacy of a particular jury instruction, this Court must consider it in the context of the charge as a whole. *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014). "A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013). Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

## A. Elements of Burglary

---

[2] *See* T.C.A. § 39-14-146(c) (punishing a fifth or subsequent conviction for shoplifting in a two-year period one classification higher).

As part of his argument with respect to the burglary statute, Defendant argues that the trial court erred in denying his request that the jury be instructed that in order to find Defendant guilty of burglary as charged in this case, the building in question had to be "not open to be public." However, because subsection (a)(3) applies to "*any* building that is not a habitation," *Abbie Leann Welch*, 2019 WL 323826, at \*4 (emphasis in original), the trial court did not err in refusing Defendant's proposed instruction. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 14.01 (stating that to find the defendant guilty under "Part C," which corresponds to subsection (a)(3), the State must prove "that the defendant entered a building other than a habitation").

### B.  *Entire Burglary Statute and the Rule of Lenity*

Defendant argues that because the central issue in this case is a contested issue of statutory construction, the jury should have been instructed on the language of the entire burglary statute, including subsections (a)(1) and (a)(2), as well as the rule of lenity. In his written motion submitted to the trial court, Defendant proffered the following proposed jury instruction, derived from *Sherelis v. State*, 498 N.E.2d 973, 978 (Ind. 1986):

> You are instructed that it is a basic rule of criminal justice that criminal statutes be strictly construed, and their ambiguities, if any, resolved in favor of the accused and against the State.

> Therefore, if you find that there is any ambiguity in the criminal statutes under which the Defendant has been charged, you should strictly construe the language of the statute and resolve such ambiguity in favor of the innocence of the Defendant.

Defendant argues that under the Tennessee Constitution, "the trial jury must determine the law, i.e., whether the language of the burglary statute covers all buildings or only those 'not open to the public.'" The State responds that the trial court did not abuse its discretion in limiting counsel's argument and not instructing the jury on matters of statutory construction.[3]

Defendant relies on the following provision of Article I, section 19 of the Tennessee Constitution, which deals generally with the freedom of speech and the press:

---

[3] While Defendant's issue statement reads "The trial court erred in restricting counsel from presenting and arguing the statutory language to the jury and in denying the request for an instruction on the rule of lenity," his argument focuses entirely on his contention that the jury should have been instructed on matters of statutory construction under the Tennessee Constitution. Because Defendant fails to cite any authority or make any argument with regard to the trial court's limitation on defense counsel's argument, this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b).

"in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other criminal cases." *See State v. Black*, 815 S.W.2d 166, 185-86 (Tenn. 1991) (discussing the historical development of this provision). This provision was not intended to alter the role of the jury in criminal cases from the common law, which was "to act under the instructions of the court, and judge of the application of the law given to them to the facts proven and declare the result, either to be innocence or guilt, as the legal elements defined by the court are proven to exist or the contrary." *Harris v. State*, 75 Tenn. 538, 548 (1881); *see State v. Johnson*, 401 S.W.3d 1, 22 (Tenn. 2013) ("At common law, the jury only maintained the right and responsibility to act under the instructions of the court and apply the law given to them to the facts proven with the mission of determining guilt.").

Thus, statutory construction is a question of law for the courts, not a question of fact for the jury. *See Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995); *Harris Truck & Trailer Sales v. Foote*, 436 S.W.2d 460, 464 (Tenn. Ct. App. 1968). "It is the duty of the court to direct the jury what the law is, and it is the duty of the jury to apply it, under the direction of the court, so far as he has directed, to the facts in evidence." *Ford v. State*, 47 S.W. 703, 704 (Tenn. 1898). In other words,

> It is the duty of the jury to ascertain under the guidance of a judge the truth in questions of fact arising either in civil litigation or a criminal process. The jury are the judges of the facts and the law as it applies to the facts. In making up their verdict, they are to consider the law in connection with the facts but *the court is the proper source from which they are to get the law*. In other words, they are judges of the law as well as the facts *under the direction of the court*.

*State ex rel. Myers v. Brown*, 351 S.W.2d 385, 388 (Tenn. 1961) (emphasis added).

If statutory construction were left to individual juries to determine, there would be "no permanency or uniformity" in the application of the law and "no security whatever either that the innocent may not be condemned, or that society will have any defense against the guilty." *Harris*, 75 Tenn. at 551-52. Moreover, appellate courts review questions of statutory construction de novo, *see State v. Gentry*, 538 S.W.3d 413, 420 (Tenn. 2017), a task that would be nearly impossible if the jury were responsible for construing an ambiguous statute in rendering their verdict. *See Harris*, 75 Tenn. at 550 ("Plainly the theory involves the absurdity, that an error of the judge may be revised, yet an error of the jury as to the law, which may be fatal to the prisoner, can never be[.]"); *see also* Tenn. R. Evid. 606(b) (rendering inadmissible a juror's testimony regarding deliberation and thought-process). Indeed, appellate courts are often called upon to apply principles of statutory construction in determining whether a trial court correctly instructed the jury, but never has it been suggested that the jury should have the ultimate

say on the matter.  *See, e.g.*, *State v. Cauthern*, 967 S.W.2d 726, 736 (Tenn. 1998) (applying principles of statutory construction in concluding that "the trial court lacked the statutory authority to instruct the jury that life without possibility of parole was a sentencing option in this case"); *State v. Paul Clifford Moore, Jr.*, No. E2015-00585-CCA-R3-CD, 2016 WL 2865759, at *10 (Tenn. Crim. App. May 12, 2016) (applying principles of statutory construction in concluding that trial court did not err in instructing jury that passion and provocation are elements of voluntary manslaughter rather than defenses to second degree murder), *perm. app. denied* (Tenn. Sept. 22, 2016); *State v. Jim George Conaser*, No. M2011-02086-CCA-R3-CD, 2013 WL 4505410, at *12 (Tenn. Crim. App. Aug. 21, 2013) (applying principles of statutory construction in concluding that trial court erred in instructing jury with regard to provisions of the sex offender registry), *no perm. app. filed*.

Finally, even if the jury is the final arbiter of matters of statutory interpretation, the canons of statutory construction are only to be applied when the statutory language is ambiguous.  "When the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage."  *Gentry*, 538 S.W.3d at 420 (internal citations omitted).  The rule of lenity, which requires that an ambiguous criminal statute be resolved in favor of the defendant, is a "tie-breaker" to be used only when an ambiguity remains after considering the plain language of the statute, the legislative history, and other canons of statutory construction.  *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010) (internal citations omitted).  However, because the language of the burglary statute is clear and unambiguous, there is no need to turn to any other tools of statutory construction.  *See, e.g.*, *Abbie Leann Welch*, 2019 WL 323826, at *3-4. Additionally, the strict construction of criminal statutes urged by Defendant in his proposed instruction is not an accurate statement of the law in Tennessee.  *See State v. Legg*, 9 S.W.3d 111, 116 (Tenn. 1999) (quoting T.C.A. § 39-11-104) ("Although the common law required courts to give statutes a strict construction, the provisions of the criminal code now are to 'be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code.'").  Thus, the trial court did not err in refusing to instruct the jury on the entire burglary statute and to give Defendant's proposed special instruction.  *See State v. Larry D. Guthrie*, No. M2009-00787-CCA-R3-CD, 2010 WL 3609271, at *3 (Tenn. Crim. App. Sept. 16, 2010) (concluding trial court did not err in denying defendant's request for a special instruction on legislative intent and statutory construction with regard to delivery of a controlled substance and casual exchange), *no perm. app. filed*.  Defendant is not entitled to relief.

## C.  Ignorance or Mistake of Fact

Defendant argues that the trial court erred by denying his request for an instruction on the defense of ignorance or mistake of fact.  Defendant contends that based on the

evidence presented at trial, the jury could have concluded that Defendant did not fully understand or remember that he was not entitled to enter Walmart four years after receiving the trespass notification. The State, on the other hand, argues that the defense of ignorance or mistake of fact was not fairly raised by the proof because Defendant did not testify as to his state of mind and there was no proof that Defendant "was surprised to learn that he was not permitted to enter Walmart." According to the State, "[n]othing about the [D]efendant's proof on this point rises above showing that he had a sustained intent to trespass on Walmart premises and willfully took advantage of Walmart's inability to detect his presence."[4]

Under Tennessee Code Annotated section 39-11-502(a), "ignorance or mistake of fact is a defense to prosecution if the ignorance or mistake negates the culpable mental state of the charged offense." Ignorance or mistake of fact is a "narrow defense." T.C.A. § 39-11-502, Sent. Comm. Cmts. Before a defendant is entitled to an instruction on ignorance or mistake of fact, it must be fairly raised by the proof. T.C.A. § 39-11-203(c); *State v. McPherson*, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994). The defendant bears the burden of introducing admissible evidence that the defense is applicable. T.C.A. § 39-11-203, Sent. Comm. Cmts.; *but see State v. Shropshire*, 874 S.W.2d 634, 638 (Tenn. Crim. App. 1993) ("The evidence introduced by the state could raise the issue of defense without a defendant presenting anything and the state would then be required to disprove the existence of the defense beyond a reasonable doubt."). In determining whether a defense is fairly raised by the proof, the trial court should consider the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense. *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001). Moreover, if an instruction on the defense is warranted, the court must instruct the jury that any reasonable doubt as to the existence of the defense requires acquittal. T.C.A. § 39-11-203(d). However, the defendant may still be convicted of the offense for which he would be guilty if the facts were as the defendant believed. T.C.A. § 39-11-502(b); *State v. Ealey*, 959 S.W.2d 605, 612 (Tenn. Crim. App. 1997).

The culpable mental state for burglary under subsection (a)(3) can be intentional, knowing, or reckless.[5] *See State v. Jason Goolsby*, No. M2002-02985-CCA-R3-CD,

---

[4] We reject the State's further argument that Defendant was required to show "that he believed that he had Walmart's effective consent to enter and *steal*." (Emphasis in original). The question of an owner's effective consent under the burglary statute applies only to the defendant's entry. *See State v. Michael Flamini*, No. E2008-00418-CCA-R3-CD, 2009 WL 1456313 (Tenn. Crim. App. May 26, 2009); *Ferguson*, 229 S.W.3d at 316. Whether Defendant lacked effective consent to exercise control over the property, an element of the subsequent theft, is a separate question, and one that Defendant conceded at trial.

[5] The trial court instructed the jury that the State had to prove that Defendant acted knowingly; however, any error was harmless. *See* T.C.A. § 39-11-301(a)(2) ("When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly.").

2006 WL 3290837, at \*2 (Tenn. Crim. App. Nov. 7, 2006) (citing T.C.A. § 39-11-301(c)), *perm. app. denied* (Tenn. Mar. 12, 2007). Thus, to negate the culpable mental state, there must be evidence that reasonable minds could accept that Defendant's ignorance or mistake of fact caused him to be unaware of the risk that Walmart did not consent to his entry. *See* T.C.A. § 39-11-302(c) (defining recklessness as "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur"). Because Defendant did not testify, there was no direct evidence that he was confused about or did not remember the terms of his ban from Walmart. Thus, we must consider the circumstantial evidence of his state of mind. *See Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973). Although it is a close question, the evidence in this case, even in the light most favorable to Defendant, does not fairly raise the defense of ignorance or mistake of fact.

The signed trespass notification form provides clear evidence that Defendant knew he was not allowed on Walmart's property as of September 2012. *See State v. Ash*, 12 S.W.3d 800, 803 (Tenn. Crim. App. 1999) (noting that "a specific order to a specific person to stay off specific property carries no similar question as to the person's knowledge [that he or she lacks the owner's consent] when he or she enters upon that property"). Despite Ms. McDonald's lack of specific memory of her interaction with Defendant, nothing about her testimony indicated that Defendant either did not understand or was told anything other than what was clearly stated on the notification form, which was that he was banned from all Walmart-owned properties until the ban was rescinded by Walmart. There was no evidence that Defendant did anything to attempt to have the ban lifted over the course of four years. We disagree with Defendant's contention that "[e]ven if there were no other facts, the mere passage of time could contribute to a finding of ignorance or mistake of fact." Although Ms. Giebudowski testified that Defendant frequently shopped at various Walmart stores around Knoxville and often made purchases with an EBT card with his name on it, she did not testify as to his state of mind or demeanor during those prior shopping trips. Similarly, the transaction record printed by Mr. McAuley showing that Defendant had made two prior returns in the month of December 2016 does not indicate his state of mind at the time he made those returns. As the trial court stated, "I think it's stretching it a bit too far to say that because he had been on other occasions that he was under mistake of fact[.]" Even in the light most favorable to Defendant, there is nothing about this circumstantial evidence that would indicate that Defendant was unaware of rather than simply disregarding the risk that Walmart did not consent to his entry into its building. Thus, the trial court did not err in refusing to give an instruction on the defense of ignorance or mistake of fact.

### III. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

As relevant here, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(3).[6] Defendant argues that the evidence is insufficient to sustain his conviction for burglary because there was evidence that Walmart was open to the public. Given our holding that subsection (a)(3) is not limited to buildings that are not open to the public, "the State was not required to establish beyond a reasonable doubt that Walmart was not open to the public." *Larry Charles Hefner, Jr.*, 2019 WL 2763007, at *6.

In the alternative, Defendant argues that the evidence is insufficient because the "undisputed proof" established that Walmart assented to Defendant's entry for certain purposes. "Effective consent" is defined as "assent in fact, whether express or apparent, including assent by one legally authorized to act for another." T.C.A. § 39-11-106(a)(9).

According to Defendant, "a prosecution for burglary cannot be sustained in instances where a retail store makes no practical effort to limit who enters and shops,

---

[6] Defendant does not challenge his convictions for theft of merchandise or criminal trespass. *See* T.C.A. §§ 39-14-146; -405.

does not check the trespass list even when the individuals provide identification, and instead takes action only if the individual commits some offense such as shoplifting." In support of his argument, Defendant relies on this Court's opinions in *State v. Ferguson*, 229 S.W.3d at 316, and *State v. Michael Flamini*, No. E2008-00418-CCA-R3-CD, 2009 WL 1456316 (Tenn. Crim. App. May 26, 2009), *no perm. app. filed*. Although both of those cases overturned convictions for burglary from businesses that were open to the general public, they are distinguishable from the case at bar because the defendants therein had not been previously banned from those businesses. As this Court has previously explained, "Though Walmart and other retail establishments may generally consent to entry by members of the public at large during normal business hours, such consent is clearly revoked when an individual has been notified in writing that [he or she is] no longer allowed on the property." *Abbie Leann Welch*, 2019 WL 323826, at *4; *see also Ash*, 12 S.W.3d at 803. While the *Ferguson* court noted that the business "did not employ any type of entry restrictions during regular business hours" as evidence that the defendant, as a member of the general public, had effective consent to enter, it did not go so far as to hold that entry restrictions were required if a business intended to revoke or withhold its consent from certain individuals. 229 S.W.3d at 316.

Similarly, we also reject Defendant's argument that Walmart effectively consented to Defendant's entry, despite his ban, by allowing him on prior occasions to enter its stores to shop. As this Court previously explained:

> [A] retail store does not effectively consent to a banned person's entry into the store simply because that individual enters the store to carry on a commercial activity. Failure to detect or to even prosecute a criminal act, criminal trespass, does not prohibit enforcement or prosecution of [a] subsequent criminal act. A retail store's failure to recognize a banned individual who enters its buildings does not amount to "assent in fact, whether express or apparent," for the banned individual to enter the retail store.

*Jason Kane Ivey*, 2018 WL 5279375, at *11; *Nikia Bowens*, 2018 WL 5279374, at *11. Defendant has cited no case for the dubious proposition that he can gain effective consent to enter a property, despite the owner's explicit revocation of consent, by repeatedly trespassing upon it. The burden should not fall upon property owners to prevent and detect trespasses and burglaries, with the failure to do so resulting in effective consent for those unwanted persons to enter the property. Because Defendant entered the University Commons store without the effective consent of Walmart and subsequently committed a

- 15 -

theft therein, he is guilty of burglary under Tennessee Code Annotated section 39-14-402(a)(3).[7]

## IV. Sentencing

Finally, Defendant argues that the trial court erred in denying his request for a community corrections sentence. When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the appropriate sentence length and combination of sentencing alternatives, the trial court shall consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

---

[7] Because we have determined that Walmart did not consent to Defendant's entry, we need not address the State's argument that any consent given was not effective because it was induced by deception. *See* T.C.A. § 39-11-106(a)(9)(A).

(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b). A trial court should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant" when "determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Our sentencing statutes promote the use of alternative sentences, "where reasonably feasible," in order to "encourage[e] effective rehabilitation" of defendants. T.C.A. § 40-35-102(3)(C). However, a defendant with a long history of criminal conduct "evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing and may be sentenced to confinement. T.C.A. § 40-35-102(5); *see also* T.C.A. § 40-35-103(1)(A). Confinement may also be imposed when "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." T.C.A. § 40-35-103(1)(C). In any case, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

Because Defendant was a career offender, the trial court was required to sentence him to the maximum sentence for the Class D felony of burglary: twelve years. *See* T.C.A. §§ 40-35-108(c); -112(c)(4). Thus, Defendant was not eligible for probation. *See* T.C.A. § 40-35-303(a). Additionally, Defendant was not "considered as a favorable candidate for alternative sentencing options[.]" *See* T.C.A. § 40-35-102(6)(A). Even though Defendant was not eligible for probation, he was eligible for a community corrections sentence because he had been convicted of nonviolent, property-related offenses. *See* T.C.A. § 40-36-106(a); *State v. Johnson*, 342 S.W.3d 520, 523 (Tenn. Crim. App. 2009). However, eligibility for community corrections does not mean that a defendant is entitled to be sentenced to community corrections as a matter of right. *State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)).

Defendant argues that the trial court abused its discretion by refusing to consider the nature and circumstances of the offense. Defendant asserts that if the denial of alternative sentencing can be justified because the facts of the particular offense were unusually serious, then the converse should be true, that "[a] particularly mild version of an offense should be, at the very least, something that could be considered by the trial court as supporting lenient or alternative sentencing." According to Defendant, "A burglary where a defendant politely (though fraudulently) obtained $39 from a massive

retailer during business hours undoubtedly falls on the mild end of that spectrum. It represents less harm to the victim, a less culpable mental state, and a lessened need for retribution." Additionally, Defendant argues that the trial court imposed an excessive sentence because it "overvalued the [D]efendant's criminal history," which "indicated a long list of addiction-related offenses."

Because the trial court imposed a within-range sentence, its decision is entitled to a presumption of reasonableness. Despite Defendant's argument to the contrary, the trial court did not state that the facts and circumstances of the offense were not relevant to determining the sentence. Rather, the trial court stated that the argument of whether the facts in this case justified a felony conviction for burglary were "for a different time and a different day," referring to Defendant's raising the argument in this Court on appeal. With regard to Defendant's criminal history, the trial court called it "one of the worst" it had seen in over thirty years of practicing law. Defendant had over thirty convictions, many of which were committed while he was on probation for prior convictions. The CAPP report indicated that Defendant's long history of criminal convictions and probation violations meant that he was not an appropriate candidate for alternative sentencing. The trial court properly considered the purposes and principles of sentencing and did not abuse its discretion in ordering Defendant to serve his sentence in incarceration. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgements of the trial court.

_____
TIMOTHY L. EASTER, JUDGE